**Danny FLOWERS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 79S00–9908–CR–411.

Supreme Court of Indiana.

Dec. 5, 2000.

Kevin R. O'Reilly, Lafayette, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Sarah E. Scherrer, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

RUCKER, Justice

### Case Summary

A jury convicted Danny Flowers of rape as a Class A felony and burglary as a Class B felony. The jury also adjudged him a habitual offender. The trial court sentenced Flowers to forty-three years im-

prisonment for the rape conviction enhanced by twenty-five years for the habitual offender adjudication. The trial court also sentenced Flowers to fifteen years for burglary to be served consecutively to the rape conviction. In this direct appeal, Flowers raises five issues for our review which we consolidate into four and rephrase as follows: (1) did the trial court err in denying Flowers' motion to quash probable cause affidavit and to dismiss; (2) did the trial court err in admitting the victim's in-court identification; (3) did the trial court err in denying Flowers' motions for mistrial; and (4) did the trial court err in denying Flowers' motion for change of judge. Finding no error, we affirm.

### Facts

In the early morning hours of May 17, 1991, H.B. was awakened to discover that a man she did not know had climbed through her window and was standing on the back of her couch. The intruder grabbed H.B., and the two fought and struggled. Ultimately the intruder raped H.B. Subsequent genetic testing showed a match between Flowers' DNA and that of the intruder. At trial H.B. identified Flowers as her attacker. A jury convicted Flowers of rape and burglary and also adjudged him a habitual offender. The trial court sentenced Flowers to an aggregate term of eighty-three years. This appeal ensued in due course. Additional facts are set forth below where relevant.[1]

### Discussion

#### I.

Prior to trial Flowers filed a pleading entitled "Motion To Quash Probable Cause and to Dismiss," which the trial court denied. R. at 673. Complaining that the probable cause affidavit was

1. This is the second time this case has come before us. The first appeal was docketed originally in the Court of Appeals. On transfer we vacated Flowers' conviction and sentence on grounds that the trial court abused its discretion in denying Flowers' motion for continuance, which was required in order for the defense to obtain the testimony of an essential DNA expert witness. *See Flowers*

*v. State*, 654 N.E.2d 1124 (Ind.1995). After remand and retrial, Flowers was again convicted and sentenced. Because Flowers' aggregate sentence for the rape conviction exceeded fifty years as a result of the habitual offender enhancement, we granted the State's motion to transfer jurisdiction to this Court.

based in part on incredible hearsay, Flowers argues that the trial court erred in denying his motion. Flowers' argument is flawed in several respects. First, lack of probable cause is not grounds for dismissing a charging information. *Hicks v. State*, 544 N.E.2d 500, 505 (Ind.1989). Under Indiana Code § 35–24–1–4, a court may, upon motion of a defendant, dismiss a defective indictment or information. However, the statute contains no provision regarding a defective probable cause affidavit. As this Court has previously observed,

> The probable cause affidavit is not the means by which the accused is charged with a crime, but is a means of satisfying the constitutional and statutory requirements that the pre-trial detention of the accused to face the charge be based upon a determination, by a neutral and detached magistrate, that probable cause exists to believe that the accused committed the crime.

*Gilliam v. State*, 270 Ind. 71, 383 N.E.2d 297, 303 (1978).

Thus, if Flowers were correct in his contention that the probable cause affidavit was deficient then his only remedy would have been release from pre-trial detention predicated upon an illegal arrest. *Id.; see also Felders v. State*, 516 N.E.2d 1, 2 (Ind.1987) ("An invalid arrest does not affect the right of the State to try a case nor does it affect the judgment of conviction."). At this stage of the proceedings, we may address only whether the alleged illegal arrest affected the admissibility of evidence obtained through a search incident to arrest. *Thomas v. State*, 451 N.E.2d 651, 654 (Ind.1983); *Williams v. State*, 261 Ind. 385, 386–87, 304 N.E.2d 311, 313 (1973). This brings us to the next flaw in Flowers' argument.

The record shows that the State charged Flowers with rape and burglary on April 24, 1992. It does not show when he was arrested. However, on May 13, 1992, while Flowers was in custody, the State filed a motion to obtain samples of Flow-

ers' blood, hair, and saliva. R. at 3. The trial court entered an order granting the motion. In this appeal Flowers asserts that his "bodily samples were taken on the strength of [the] defective affidavit of probable cause" and that "the evidence gleaned from [his] bodily samples should have been excluded." Brief of Appellant at 11, 12.

■ We first observe that Flowers has failed to provide any citation to the record supporting his claim that the trial court's order was premised on the probable cause affidavit at issue in this appeal. And our own examination of the record reveals no such support. Rather, the record merely shows the existence of the probable cause affidavit and a CCS entry where the trial court granted the State's motion for blood, hair, and saliva samples. In any case, Flowers neither objected to the taking of the samples nor filed a motion to suppress the evidence. Further, at trial Flowers' only objection to the admission of the blood, hair, and saliva samples was that there was an insufficient chain of custody and thus "the State has failed to lay a proper foundation." R. at 2367. In like fashion Flowers made the same objection to the DNA evidence derived from the blood sample evidence. A party may not object on one ground at trial and then assert a different ground on appeal. *Willsey v. State*, 698 N.E.2d 784, 793 (Ind. 1998). To the extent Flowers now claims the evidence was inadmissible because it was the product of a search incident to an illegal arrest, the issue is waived for review. *See id.*

Similarly, to the extent Flowers claims that the alleged defective affidavit provided the basis for a body search warrant and thus the evidence seized thereby was inadmissible, this issue is waived also because it is a different claim than that made at trial. We note, however, that this Court has held that "[p]olice are allowed to take samples of [hair, blood, and saliva] from a defendant without a warrant provided no unreasonable intrusion is involved." *Jack-*

*son v. State,* 597 N.E.2d 950, 959 (Ind. 1992) (rejecting defendant's claim that a body search obtained by police violated his right to due process and to be free from illegal searches and seizures), *cert. denied,* 507 U.S. 976, 113 S.Ct. 1424, 122 L.Ed.2d 793 (1993), *appeal after remand,* 625 N.E.2d 1219 (Ind.1993); *see also Heald v. State,* 492 N.E.2d 671, 681 (Ind.1986) (upholding discovery order authorizing the taking of blood samples and rejecting claim that a search warrant was required). In sum, we find no error in the trial court denying Flowers' motion. And because Flowers makes an argument on appeal not raised before the trial court concerning the admission of evidence, this issue is waived for review.

## II.

Prior to trial Flowers filed a *motion in limine* seeking to preclude the rape victim's in-court identification. Characterizing her identification of him at his first trial in 1992 as a "pre-trial identification," Flowers contended that it was an unduly suggestive "show-up" and would provide the sole basis for the in-court identification in the instant case. After a hearing, the trial court denied the motion. Over Flowers' objection, the trial court allowed the victim to identify Flowers at trial as her attacker. Making the same argument before this Court that he made before the trial court, Flowers contends the trial court erred in overruling his objection.

First, we reject the notion that Flowers' appearance in court at his first trial amounted to a "show-up"—unduly suggestive or otherwise. A "show-up" presupposes an out-of-court confrontation conducted by police for the purpose of allowing a witness to identify a suspect. *See, e.g., Wethington v. State,* 560 N.E.2d 496, 501 (Ind.1990) (commenting on the "exigencies associated with the police decision to utilize a show-up procedure as opposed to other alternatives. . . ."). No such conduct occurred here. Second, even if Flowers were subjected to an unduly

suggestive pre-trial procedure, the law is settled that an in-court identification is nonetheless admissible " 'if the witness has an adequate independent basis for [the] in-court identification.' " *Logan v. State,* 729 N.E.2d 125, 131 (Ind.2000) (quoting *Brown v. State,* 577 N.E.2d 221, 225 (Ind.1991)); *see also French v. State,* 516 N.E.2d 40, 42 (Ind.1987); *Henson v. State,* 467 N.E.2d 750, 753 (Ind.1984). Although not an exhaustive list, the factors a court considers in determining whether an independent basis exists include:

> [T]he amount of time the witness was in the presence of the perpetrator and the amount of attention the witness had focused on him, the distance between the two and the lighting conditions at the time, the witness's capacity for observation and opportunity to perceive particular characteristics of the perpetrator, the lapse of time between the crime and the subsequent identification. . . .

*Wethington,* 560 N.E.2d at 503. Although H.B. could not quantify the exact amount of time that Flowers was present in her apartment, she did testify that he was there "a few minutes" during which time she fought and struggled with him and she "got a good look at him." R. at 1446, 1448. H.B. also testified that after the struggle Flowers placed a blanket over her head and raped her. When the assault was over, H.B. removed the blanket, and she "saw him again" as Flowers pulled up his pants and ran out the door. R. at 1482, 1448. According to H.B., during the entire encounter, the room was illuminated with light from the television that "lit up the whole front room." R. at 1447. Based on this evidence, we conclude a basis for H.B.'s in-court identification existed independent of any alleged unduly suggestive pre-trial procedure. The trial court did not err in admitting the in-court identification.

## III.

During the course of trial Flowers made

two motions for mistrial: [2] one during *voir dire* and the other during closing arguments. Both were denied, and Flowers now claims error.

### A. Motion for mistrial made during voir dire

■ During jury selection, a potential juror recounted that he was a friend and neighbor of another member of the jury pool and the two had talked about this case. Before he said anything further, a hearing was conducted outside the presence of the other members of the pool. The potential juror then recounted that while present in the jury room, his friend and neighbor informed him that this was a retrial of Flowers. After questioning both potential jurors outside the presence of the other members of the pool, the trial court discharged them for cause. Flowers moved for mistrial on grounds that other members of the jury pool may have overheard the conversation between the two discharged jurors. Indicating he was satisfied that no one else overheard the conversation, the trial court denied the motion. Further *voir dire* indicated that another juror had overheard the conversation as well, and he too was discharged for cause.

In this appeal, Flowers contends the trial court erred in denying his motion and that "at the very least, the trial court should have polled the seated jurors individually regarding whether they heard the conversation." Brief of Appellant at 21–22. To support his contention, Flowers cites *Monserrate v. State*, 265 Ind. 153, 352 N.E.2d 721 (1976). In that case, the defendant had been found guilty of murder and sentenced to death. The judgment was reversed and the cause remanded for a new trial. During *voir dire* upon retrial, it was revealed that a newspaper article concerning the defendant had been passed among some of the prospective jurors. In order to insure that the jury did not pos-

sess knowledge of the defendant's prior conviction and death sentence, the trial judge attempted to eliminate any prospective juror who had even heard of the word "retrial." *Id.* at 722. When it became apparent that a large number of jurors had at least heard of the existence of the article, the court announced that all previous challenges by the defense would be treated as challenges for cause. Also, the trial court individually polled each juror who had already been accepted to determine whether he or she had seen or heard of the article. On appeal the defendant claimed error in the trial court denying his motion for mistrial or, in the alternative, quashing the panel of prospective jurors on the ground that they had been exposed to improper and prejudicial out-of-court information. This Court concluded there was no error, reasoning in part that the defendant presented no evidence suggesting that the trial court's efforts did not succeed in selecting an impartial jury. *Id.* at 723.

■ *Monserrate* is of no help to Flowers. Unlike the facts in that case, here Flowers has not alleged that the panel of prospective jurors was actually exposed to improper out-of-court information. Rather, he suggests that the trial court in this case was required to use the procedure employed by the trial court in *Monserrate* to determine whether any juror had been exposed to any improper information. Flowers is mistaken. This Court outlined the correct procedure in *Lindsey v. State*, 260 Ind. 351, 295 N.E.2d 819 (1973). The *Lindsey* procedure anticipates an in-court collective interrogation where there has been a suggestion that the jury has been exposed to improper and prejudicial publicity. *Id.* at 358–59, 295 N.E.2d at 824. Pursuant to *Lindsey*, once presented with the possibility of extra-judicial comments made to a juror, the trial court must first make a threshold determination of wheth-

---

**2.** Actually Flowers made three motions for mistrial. However, the third motion was made in the context of a claim that the trial

court exhibited bias and prejudice. We discuss this issue in section IV.

er there is an actual likelihood of prejudice. If "the risk of prejudice appears substantial, as opposed to imaginary or remote" then the court must "interrogate the jury collectively to determine who, if any, has been exposed" and take additional remedial action. *Id.* at 358–59, 295 N.E.2d at 824; *see also Gregory v. State,* 540 N.E.2d 585, 589 (Ind.1989) (citing *Lindsey,* 260 Ind. at 358–59, 295 N.E.2d at 824). Absent a showing in the first instance that the supposed extra-judicial comments actually raised a risk of substantial prejudice, the trial court has no responsibility to engage in a collective interrogation.

 Here, the record does not show that the two prospective jurors discussed the merits of this case or any of its details. Rather, one prospective juror simply commented to his friend and neighbor that this was a retrial. Even though the trial court discharged the two prospective jurors as well as a third prospective juror who overheard the comment, the trial court could very easily have determined there was no risk of substantial prejudice necessitating an inquiry of those jurors already accepted by the parties. A trial court's ruling on a motion for mistrial is afforded great deference on appeal because the trial court is in the best position to evaluate the circumstances and their impact on the jury. *Kent v. State,* 675 N.E.2d 332, 335 (Ind.1996). A mistrial is an extreme remedy invoked only when no other measure can rectify the situation. *Id.* This extreme remedy was not warranted here.

### B. Motion for mistrial made during closing argument

 During its case-in-chief the State introduced evidence that Flowers' DNA matched samples taken from the rape kit swabs received from H.B. The State's DNA experts testified that the probability the DNA belonged to someone other than Flowers was one in seventy million. During the presentation of his defense, Flowers introduced testimony from his own DNA expert criticizing the conclusions reached by the State's DNA experts. Although Flowers' expert could not say that Flowers should have been excluded as a suspect, he testified that additional testing should have been done. R. at 2627, 2629. Flowers' expert did not actually conduct DNA testing of his own. Rather, he examined the tests conducted by the State's experts.

During closing argument defense counsel followed up on the theme that the conclusions reached by the State's DNA experts were faulty. In rebuttal the prosecutor commented:

> Nobody else did the [DNA] testing. It was the state's experts. Now, ladies and gentlemen, don't misunderstand me. It's the state's burden. We had the burden to prove to you beyond a reasonable doubt. But obviously the defense doesn't (inaudible) a lot of testing. The evid—the evidence was that there was sample left. They aren't precluded.

R. at 2753–54. Flowers objected and moved to strike the prosecutor's comment. The trial court overruled the objection and denied the motion to strike. After the State completed its closing argument but before the jury retired for deliberations, Flowers moved for a mistrial. The trial court denied the motion. In this appeal Flowers argues the trial court erred in denying his mistrial motion insisting that the prosecutor's comments "shift[ed] the burden of proof to the defense...." Brief of Appellant at 15.

 "To preserve an issue regarding the propriety of a closing argument for appeal, a defendant must do more than simply make a prompt objection to the argument. Defendant must also request an admonishment, and if further relief is desired, defendant must move for a mistrial." *Wright v. State,* 690 N.E.2d 1098, 1111 (Ind.1997). Failure to request an admonishment results in waiver of the issue for appellate review. *Phillips v. State,* 719 N.E.2d 809, 811 (Ind.1999). Here, al-

though Flowers objected to the prosecutor's remarks at trial, he failed to request an admonition. This issue is waived.

Waiver notwithstanding, Flowers still cannot prevail. In *Pettiford v. State*, 506 N.E.2d 1088 (Ind.1987), we held that the impropriety of a prosecutor's comments during closing argument inferring that the burden of proof shifted from the State to the defendant was *"de minimis"* and cured by the court's preliminary and final instructions which advised the jury that the defendant was not required to present any evidence or prove his innocence. *Id.* at 1089–90; *see also Chubb v. State*, 640 N.E.2d 44, 48 (Ind.1994) (applying the *Pettiford* rationale). Here, assuming for the sake of argument that the prosecutor's comments can be interpreted as shifting the burden of proof, the record shows that in both its preliminary and final instructions the trial court advised the jury:

> Under the law of this State, a person charged with a crime is presumed to be innocent. To overcome the presumption of innocence, the State must prove the defendant guilty of each essential element of the crime charged, beyond a reasonable doubt.

> The defendant is not required to present any evidence to prove his innocence or to prove or explain anything.

R. at 921, 1004. Thus, as in *Pettiford* and *Chubb*, the jury here was properly instructed that the defendant was not required to present any evidence or prove his innocence. Accordingly, we find that any impropriety in the prosecutor's closing argument was *de minimis* and overcome by the preliminary and final instructions. The trial court did not err in denying Flowers' motion for mistrial.

**IV.**

■■■ Eight days before the scheduled trial date, Flowers filed a "Belated Verified Motion For Change of Judge and Appointment of Special Judge." As grounds for the motion, Flowers claimed that the judge "is associated with the pending litigation and has an interest in the outcome." R. at 708. The trial court denied the motion. On appeal Flowers elaborates on this claim asserting bias because the trial court denied his motion for continuance to obtain an expert witness during the first trial.

Under Indiana Criminal Rule 12, where a cause has been remanded for a new trial, an application for change of judge must be filed within ten days after the party has knowledge that the case is ready to be set for trial. However, if the defendant obtains knowledge of a cause for change of judge after the ten-day period, then the defendant may file a verified motion for change of judge "specifically alleging when the cause was first discovered, how it was discovered, the facts showing the cause for a change, and why such cause could not have been discovered before by the exercise of due diligence." Crim.R. 12(D)(2).

■■■ In this case, Flowers filed his verified motion for change of judge well after the ten-day period.[3] Although alleging facts he contended supported a cause for change of judge, Flowers failed to allege when he first learned of the grounds for a change of judge or why these grounds could not have been discovered earlier in the exercise of due diligence. The law is settled that a defendant is not entitled to a change of judge where the mandates of Criminal Rule 12 have not been followed. *See, e.g., Smith v. State*, 477 N.E.2d 857, 864 (Ind.1985) (declaring that Criminal Rule 12 "requires a specific

**3.** The record shows that after remand by this Court in August 1995, the parties agreed on September 11, 1995, that this case would proceed to trial on January 23, 1996. R. at 10. Because of a series of continuances by both the State as well as Flowers, this cause was not tried until September 16, 1997. A timely motion for change of judge was required to be filed no later than September 21, 1995, ten days after Flowers was on notice that this case was ready to be set for trial.

factual and explanatory statement for belated motions [for change of judge] to be proper."); *Welch v. State,* 564 N.E.2d 525, 529 (Ind.Ct.App.1990) (ruling that the trial court was justified in denying defendant's motion for change of venue which was based on trial judge bias and prejudice where the motion did not follow the dictates of Criminal Rule 12). Because of the deficiency in Flowers' motion for change of judge, the trial court properly denied it.[4]

In a related argument Flowers seems to contend the trial judge should have disqualified himself because of bias and prejudice. We say "seems to" because on the one hand Flowers refers to the Indiana Code of Judicial Conduct;[5] on the other hand, Flowers couches his argument in terms of alleged trial court error in denying his renewed motion for change of judge made orally during the course of trial. Flowers' oral motion was properly denied because it did not comply with Criminal Rule 12. As for the contention that the trial court should have disqualified himself, the facts are these. During the course of trial Flowers became upset about an evidentiary ruling the trial court made. When he returned to the custody of the Tippecanoe County Sheriff's Department at the close of trial that day, Flowers commented: "this is bull* * * *;" told a sheriff's deputy that the judge was helping the prosecutors build a case against him; that "he was going to do something;" and that he did not "have anything to lose." R. at 1662, 1663. Concerned about courtroom safety, the deputy fitted Flowers with a "stun belt" for his appearance at trial the following day. In a hearing outside the presence of the jury, Flowers objected to wearing the device, renewed his motion for change of judge, and moved for mistrial. The trial court denied the motions noting the need for courtroom security and observing that Flowers was wearing the device under his clothing where the jury could not see it.

At another point during the course of trial, the trial judge played for the jury the tape-recorded testimony of a witness taken during the first trial but who was unavailable for the retrial. To aid the jury in understanding the tape, the judge provided transcripts. After the tape was played, a juror indicated that she was missing a portion of the transcript that contained part of Flowers' cross-examination of the witness. After determining that a page of the transcript was indeed missing and apparently supplying it to the juror, the trial judge commented, "I don't think you missed too much, did you?" R. at 1915. Flowers raised no objection.

In this appeal, Flowers points to the trial court's comment, as well as the trial court's denial of his renewed change of judge motion and motion for mistrial, as evidence that the court was biased and prejudiced against him. The law presumes that a judge is unbiased and unprejudiced in the matters that come before the judge. *James v. State,* 716 N.E.2d 935, 940 (Ind.1999); *Taylor,* 587 N.E.2d at 1303; *Smith,* 477 N.E.2d at 864. A judge has the discretionary power to disqualify himself or herself *sua sponte* whenever any semblance of judicial bias or impropriety comes to the judge's attention. In addition, where a judge harbors actual prejudice in a case, justice requires that a *sua sponte* judicial disqualification from the case be made. *Smith,* 477 N.E.2d at

---

4. Even if Flowers had followed the dictates of Criminal Rule 12 he still cannot prevail. The mere fact that a trial judge has presided over a previous trial which resulted in a conviction and a subsequent reversal does not necessarily disqualify the judge from presiding over the retrial. *Lasley v. State,* 510 N.E.2d 1340, 1341 (Ind.1987). Further, an adverse ruling alone is not sufficient to show bias or prejudice. *Taylor v. State,* 587 N.E.2d 1293, 1303 (Ind.1992).

5. Specifically, Flowers directs our attention to Canon 3(E)(1) which provides in pertinent part: "A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned...."

864. The record must show actual bias and prejudice against the defendant before a conviction will be reversed on the ground that the trial judge should have been so disqualified. *Id.*

 We disagree with the notion that the trial court's denial of Flowers' motions demonstrated bias or prejudice. Given Flowers' obvious agitation with the trial court's ruling, the trial judge was properly concerned about the safety and security of court personnel as well as observers in the courtroom. Requiring Flowers to wear a device as opposed to increasing the number of sheriff's deputies in the courtroom was an acceptable alternative precautionary measure. As for the trial court's comments, Flowers did not object. Where a defendant fails to object to comments a trial judge makes during trial, the issue is waived for review. *Mitchell v. State,* 726 N.E.2d 1228, 1235 (Ind.2000). Waiver notwithstanding, Flowers' claim fails. A defendant must show that the trial judge's action and demeanor crossed the barrier of impartiality and prejudiced the defendant's case. *Timberlake v. State,* 690 N.E.2d 243, 256 (Ind. 1997). Flowers has made no such showing.

### Conclusion

We affirm the judgment of the trial court.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.