## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 15 2016, 8:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Patrick B. McEuen
McEuen Law Office
Portage, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Angela Crim n/k/a Angela Domagalski, <br><br> *Appellant-Petitioner,* <br><br> v. <br><br> Elias Crim, <br><br> *Appellee-Respondent.* | November 15, 2016 <br><br> Court of Appeals Case No. 64A05-1603-DR-527 <br><br> Appeal from the Porter Superior Court <br><br> The Honorable Mary A. DeBoer, Special Judge <br><br> Trial Court Cause No. 64D02-0401-DR-537 |

**Najam, Judge.**

## Statement of the Case

[1] Angela Crim n/k/a Angela Domagalski ("Mother") appeals the trial court's post-secondary educational expenses order and attorney's fee award following a

bench trial on Elias Crim's ("Father") post-dissolution petition to modify child support. Mother raises five issues, which we consolidate and restate as the following three issues:

> 1. Whether the trial court erred when it ordered Mother to pay post-secondary educational expenses for her daughter, L.C.
>
> 2. Whether the trial court abused its discretion when it ordered Mother to pay Father's attorney's fees.
>
> 3. Whether the trial court was biased against Mother.

We affirm.

## Facts and Procedural History

Mother and Father were married in 1996, and their marriage was dissolved on June 29, 2006. The parties have three children and, initially, they split parenting time equally between them. On July 10, 2013, Father filed a Petition for Modification of Custody seeking sole legal and physical custody of all three children. In September 2013, the court entered a Pre-Trial Order in which Mother did not contest Father having full custody of the parties' oldest daughter, L.C. On March 31, 2014, Father filed a Supplemental Petition for Modification of Custody and Parenting Time because Mother had left the state of Indiana. Over the next several months, Father filed several more motions relating to child custody and support.

On February 23, 2015, Mother failed to appear for a status hearing as ordered. The Court entered a status order in which Mother was ordered to pay Father

child support in the amount of $130.00 per week effective March 1, 2015. The court ordered the parties to attend mediation and noted it would set the matter for a hearing on all pending issues after the parties attended the mediation. The Court also acknowledged the newly ripe issue of L.C. attending college in the fall of 2015 and the need for post-secondary education orders.

[5] Father filed a request for a hearing on the issue of post-secondary educational expenses for L.C., and the court set the cause for an April 14 status conference. Mother failed to appear for the status conference but appeared by counsel. The Court instructed Mother to notify her attorney as well as the court of her address and telephone number by April 20, and the court terminated the children's parenting time with Mother until such time as she surrendered herself to the Court for a hearing.

[6] The trial court held a status conference on June 10 at which Mother again failed to appear in person but was represented by counsel. The court ordered Mother to appear in person for all future hearings. The court also ordered both parties to provide each other with their financial information from 2011 through 2014, and the court set the matter for another hearing. On June 11, Mother filed her notice of intent to relocate to Arizona in which she provided her Arizona address and informed the court that her cellular telephone number was confidential pursuant to her participation in the Arizona Address

Confidentiality Program for victims of domestic violence. Mother also requested parenting time with the parties' children.[1]

On December 28, 2015, the parties filed their Agreed Stipulations and Orders in which they resolved all issues except for post-secondary educational expenses for L.C. and Father's request for attorney's fees. On January 6, 2016, the court held a hearing on all remaining issues. By that time, Mother had moved to Hawaii, and she again failed to appear for the hearing in person but appeared by counsel. On January 6, the court issued its final order adopting and incorporating the parties' December 28 Stipulations and Orders and resolving all other pending issues as follows:

> 5. As to the issue of contribution by the Parties to the post-secondary education expenses of the child L.C., the Court states as follows:
>
> A. Mother's argument for a finding of repudiation is denied.
>
> B. Mother's argument for a finding of non-affordability is denied.
>
> C. Father has saved $25,000 from a prior inheritance for child L.C. This shall be allocated at the rate of $6250 per year for four (4) years. It shall first benefit L.C. as toward her share, and then benefit Father if there is a spill-over of the benefit.

---

[1] It is not clear from Mother's brief or the record when Father obtained physical custody of all of the parties' children, but he apparently did so some time before Mother relocated to Arizona.

D. L.C. shall apply for all reasonable grants, scholarship, and loans. L.C. may also have some nominal employment during times off from school, but contribution from the same is not presumed/required.

E. The overall obligation for Indiana University Bloomington shall presumptively be the published "average student" obligation each academic year. For year 2015-16 this obligation is $24,538.

This issue will require review each year, to adjust the obligations of the Parties relevant to the financial aid granted (for instance, a Pell Grant may be received in future years by L.C.). Thus, Counsel for the Parties is therefore ordered each summer, by July 22nd for each of L.C.'s expected remaining three years (2016-17, 2017-18 and 2018-19)[,] to review the upcoming academic year costs and attempt to submit a status report or stipulation to this Court for review.

F. L.C.'s obligation shall be for 1/3 of the overall presumed obligation each academic year. She shall first utilize any grants, scholarships, and other "free" benefits toward her obligation, and then apply any of the $6250 savings as stated above toward her obligation—noting that any spill-over of the $6250 shall thereafter be credited against Father's obligation.

The Parties' obligations shall be for 2/3 of the overall obligation, divided between them by income percentage. The current division is 61% to Father and 39% to Mother.

Therefore, for academic year 2015-2016, the division of the $24,538 cost is allocated as follows:

| | |
|---|---|
| Child L.C. | $8,179 |
| Mother Angela | $6,380 |

Father Elias          $9,979

As to her stated share of $6380 for academic year 2015-16, Mother shall begin payments toward her share of such cost at the rate of $200 per month, payable to Father, beginning February 2016.  Such payment shall be through the Clerk of this Court.

It is noted as follows:

As this amount of $6380 due from Mother to Father will be paid through the Clerk, it will be noted as an "arrearage" to be paid as a function of child support, in the manner of child support and thus[,] when possible[,] through a wage order.  This is in addition to the prior arrears of $15,000 per the stipulation of the Parties. Therefore, Mother's total "arrears" are $21,380.  The Parties agreed that Mother would pay $30 per week toward the $15,000 and now the Court order[s] Mother to pay $200 per month ($46 per week) to the college expenses[.  S]o at this time Mother will pay $76 per week toward arrears, to be adjusted in approximately 139 weeks when Mother's college-expense obligations are expected to be paid in full.

6. Mother's weekly obligation therefore toward support and arrears, to be paid through the Clerk and/or INSCCU, is as follows:

$130 per week in base support to start January 1, 2016
$30 per week toward [child support] arrears of $15,000 to start January 1, 2016
$46 per week toward post-secondary arrears of $6,380 to start February 5, 2016
_____
$206 per week.

7. Mother is ordered to pay and/or to reimburse legal fees incurred by Father relevant to the issues of the December 28, 2015 stipulations and orders, and issues resolved this date, in the total amount of $14,184.10, as follows:

A. Mother shall pay to Father a total of $2,837.85 at the rate of $50 per month beginning with the month of July 2016 until paid in full.

\* \* \*

B. A Judgment is entered against Mother, and in favor of Attorney Scott Wagenblast, in the amount of Fourteen Thousand Dollars ($14,000.00).

Appellant's App. at 23-24. This appeal ensued.

# Discussion and Decision

## *Standard of Review*

When a trial court issues findings, as the court did here, we will "not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Ind. Trial Rule 52(A). We apply "a two-tiered standard of review by first determining whether the evidence supports the findings and then whether the findings support the judgment." *Masters v. Masters*, 43 N.E.3d 570, 575 (Ind. 2015).

> In evaluating whether the findings support the judgment, we will reverse "only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that a mistake has been

made." *Egly v. Blackford Cnty. Dep't of Pub. Welfare*, 592 N.E.2d
1232, 1235 (Ind. 1992). "[T]he reviewing court may affirm the
judgment on any legal theory supported by the findings."
*Mitchell v. Mitchell*, 695 N.E.2d 920, 923 (Ind. 1998).

*Id*.

[9] We also note that Father has not filed a brief. When an appellee fails to submit a brief, we do not undertake the burden of developing arguments for him, and we apply a less stringent standard of review with respect to showings of reversible error. *Zoller v. Zoller*, 858 N.E.2d 124, 126 (Ind. Ct. App. 2006). That is, we may reverse if Mother establishes prima facie error, which is an error at first sight, on first appearance, or on the face of it. *Id*.

### Issue One: Post-Secondary Educational Expenses

[10] Mother contends that the trial court should not have ordered her to pay post-secondary educational expenses at all because L.C. "repudiated" her relationship with Mother. She also asserts, apparently in the alternative, that the trial court erred in determining how much of those expenses she should pay in that the court failed to consider her own student loan debts and L.C.'s ability to obtain student loans.

[11] Decisions to order the payment of post-secondary educational expenses are reviewed under an abuse of discretion standard, while apportionment of the expenses is reviewed under a clearly erroneous standard. *Smith v. Weedman (In re Paternity of C.H.W.)*, 892 N.E.2d 166, 171 (Ind. Ct. App. 2008), *trans. denied*.

Additionally, the trial court has discretion to determine what is included in educational expenses. *Id*.

*Repudiation*

A court may order a parent to pay part or all of a child's extraordinary educational costs when appropriate. Ind. Code § 31-16-6-2 (2016); *In re Paternity of C.H.W.*, 892 N.E.2d at 171. However, repudiation of a parent by a child is recognized as a complete defense to such an order. *Kahn v. Baker*, 36 N.E.3d 1103, 1112 (Ind. Ct. App. 2015) (citing *McKay v. McKay*, 644 N.E.2d 164, 166 (Ind. Ct. App. 1994)), *trans. denied*. Repudiation is defined as a child's complete refusal to participate in a relationship with the parent. *Id*. (citing *Norris v. Pethe*, 833 N.E.2d 1024, 1033 (Ind. Ct. App. 2005)). There is no absolute legal duty on parents to provide a college education for their children; therefore, where a child, as an adult over eighteen years of age, repudiates a parent, that parent may dictate what effect this will have on his or her contribution to college expenses for that child. *Id*. Accordingly, a child's complete refusal to participate in a relationship with a parent may obviate a parent's obligation to pay certain expenses, including college expenses. *Id*. A finding of repudiation is fact-sensitive. *See Id*. at 1113-14 (reviewing Indiana case law where repudiation was found) and cases cited therein.

In support of her assertion that L.C. has repudiated her, Mother notes that she and L.C. had a falling out in May 2013, and she contends that L.C. has not shown her "a minimum amount of respect and consideration" since then.

Appellant's Br. at 25 (quoting *McKay*, 644 N.E.2d at 167). Mother points out that L.C. began living with Father around that time, but she also admits that L.C. still visited her. And Mother admits that L.C. calls her and sends her text messages on holidays and occasionally "to tell Mother about school or life events." *Id*. at 26. That is not evidence of a complete refusal to participate in a relationship with mother. Rather, similar facts led us to conclude in *Kahn* that the discord between the parent and child "did not rise to the level of repudiation." 36 N.E.3d at 1114 (holding daughter did not repudiate father, even though they had a falling out and did not see or talk to each other for over a year, where daughter continued to send father e-cards, texts, and email messages). Moreover, it was Mother's choice to move to Arizona and then Hawaii, thus creating a great physical distance between her and L.C. The trial court did not err in holding L.C. has not repudiated her relationship with Mother, and Mother has failed to establish a prima facie case that the trial court abused its discretion in ordering her to pay a portion of L.C.'s college expenses.

*Apportionment of L.C.'s post-secondary educational expenses*

[14] Nor did the trial court err in its apportionment of L.C.'s college expenses. Indiana Code Section 31-16-6-2 provides that a child support order may include amounts for the child's education in elementary and secondary schools and at postsecondary educational institutions, taking into account: (A) the child's aptitude and ability; (B) the child's reasonable ability to contribute to educational expenses . . . and (C) the ability of each parent to meet these expenses. And Indiana Child Support Guideline 8(b) provides:

In making [a] decision [to award post-secondary educational expenses], the court should . . . weigh the ability of each parent to contribute to payment of the expense, as well as the ability of the student to pay a portion of the expense.

When determining whether or not to award post-secondary educational expenses, the court should consider each parents' income, earning ability, financial assets and liabilities. . . . If the court determines an award of post-secondary educational expenses would impose a substantial financial burden, an award should not be ordered.

If the court determines that an award of post-secondary educational expenses is appropriate, it should apportion the expenses between the parents and the child, taking into consideration the incomes and overall financial condition of the parties and the child, education gifts, education trust funds, and any other education savings program. The court should also take into consideration scholarships, grants, student loans, summer and school year employment and other cost-reducing programs available to the student.

[15]     Here, Mother asserts that the trial court erred in its apportionment of college expenses because it "ignor[ed] all evidence of the substantial financial burden occasioned by Mother's own post-decree student loan debt" in the amount of approximately $60,000. Appellant's Br. at 20. However, the record shows that the court considered all the parties' financial information; it ordered the parties to provide such information for the years 2011 through 2014 and it adopted and incorporated the parties' December 28, 2015 Stipulations and Orders that included both a child support worksheet and a post-secondary education worksheet that were completed by the parties. The trial court also specifically

considered Mother's student loan debt, which was documented in Petitioner's Exhibits 2 and 3, and it heard argument from Mother's counsel on the issue of her ability to pay for college expenses. Having reviewed all of that information, the trial court issued a specific finding denying Mother's argument of "non-affordability," and Mother has not shown that that decision was clearly erroneous. Appellant's App. at 23.

[16] Mother also contends that the trial court erred in failing to consider L.C.'s ability to obtain student loans and/or work. However, Mother is mistaken. The trial court ordered L.C. to pay for one-third of her college expenses. *Id.* And the court's finding 5(D) states "L.C. *shall apply for all reasonable* grants, scholarships, and *loans*," and she "may also have some nominal employment," though it is not required. *Id.* (emphasis added). There is nothing in the applicable statute or the child support guidelines that require the trial court to order the child to obtain loans and/or work; rather, the child's ability to obtain loans and work is simply one of the factors the court must consider. The trial court did so here, and its decision that L.C. would be required to seek student loans but would not be required to work was not clearly erroneous. *See, e.g., Thompson v. Thompson*, 811 N.E.2d 888, 927 (Ind. Ct. App. 2004) (holding child support order appropriating college expenses satisfied the requirement of making the child responsible for contributing to the cost of education, where the order required the child to apply for any and all scholarships or grants for which the child may qualify), *trans. denied*. Mother has failed to establish a prima facie

case that the trial court clearly erred in its apportionment of post-secondary educational expenses.

### Issue Two: Award of Attorney's Fees

[17] Mother contends that the trial court erred in awarding Father his attorney's fees in the post-dissolution proceedings to modify custody and child support.

> A determination regarding attorney fees in proceedings to modify a child support award is within the sound discretion of the trial court and will be reversed only upon a showing of a clear abuse of that discretion. In determining whether to award attorney fees, the trial court must consider the parties' resources, their economic condition, their ability to engage in gainful employment, and other factors that bear on the award's reasonableness. The trial court, however, need not cite the reasons for its determination.

*Whited v. Whited*, 859 N.E.2d 657, 665 (Ind. 2007); *see also* I.C. § 31-16-11-1 (allowing award of attorney's fees in child support proceedings); *D.B. v. M.B.V.*, 913 N.E.2d 1271, 1276 (Ind. Ct. App. 2000) (applying I.C. § 31-16-11-1 to proceedings to modify child custody). Moreover, the court may consider any misconduct on the part of one party that necessitated additional legal expenses for the other party. *D.B.*, 913 N.E.2d at 1276.

[18] The attorney fee award here totaled $14,000 for time spent and costs incurred by Father's attorney from May 1, 2013 through January 6, 2016, the period of time during which Father's post-dissolution petition for modification was pending. Respondent's Ex. 4. This award was based on the Affidavit of Father's attorney, which included an itemization for the relevant time period.

*Id.* Before Respondent's Exhibit 4 was admitted into evidence, Mother's attorney reviewed the twelve page itemization and had Father's attorney remove $3,633.25 unrelated charges. *Id.*; Tr. at 35. The $14,000 attorney fee award does not include those unrelated charges.

[19] Mother maintains that the trial court failed to consider "*any* factor bearing on the reasonableness of the [attorney's fee] award." Appellant's Br. at 27 (emphasis original). However, as noted above, the record shows that the trial court considered each party's financial position as shown by the fact that it requested and received such evidence. Moreover, it is apparent that the trial court took into consideration Mother's misconduct throughout the modification proceedings. Mother had failed to appear before the court *as ordered* on three separate occasions. On September 9, 2015, she had filed a Petition to Appear Electronically at the January 6 hearing, and that motion was denied; yet Mother still failed to appear in person for that hearing, as ordered. Thus, at the end of the hearing, in reference to Father's request for attorney's fees, the court noted that Mother gave "zero cooperation" in the proceedings until the December 2015 agreement of the parties, and the court noted that she made "no effort" to appear before the court, as ordered. Tr. at 91, 92, 94-95. The trial court did not abuse its discretion when it considered Mother's failure to cooperate in the proceedings and failure to appear before the court as ordered when making its attorney's fee determination, *D.B.*, 913 N.E.2d at 1276, and the court was not required to cite its reasons for that determination, *Whited*, 859 N.E.2d at 665.

## Issue Three: Alleged Bias of the Trial Court

[20] Finally, Mother maintains that the January 6, 2015, order should be reversed and the case should be remanded for a new trial due to the trial court's bias against her.

> The law presumes that a trial judge is unbiased. *Carter v. Knox Cnty. Office of Family & Children*, 761 N.E.2d 431, 435 (Ind. Ct. App. 2001). To overcome that presumption, the party asserting bias must establish that the trial judge has a personal prejudice for or against a party. *Id.* Clear bias or prejudice exists only where there is an undisputed claim or the judge has expressed an opinion on the merits of the controversy before him or her. *Id.* "Adverse rulings and findings by the trial judge do not constitute bias per se. Instead, prejudice must be shown by the judge's trial conduct; it cannot be inferred from his [or her] subjective views." *Id.* (citations omitted). Said differently, a party "must show that the trial judge's action and demeanor crossed the barrier of impartiality and prejudiced" that party's case. *Flowers v. State*, 738 N.E.2d 1051, 1061 (Ind.2000).

*Richardson v. Richardson*, 34 N.E.3d 696, 703-04 (Ind. Ct. App. 2015); *see also* Ind. Judicial Conduct Canon 2 (requiring a judge to perform the duties of judicial office impartially, competently, and diligently).

[21] Mother bases her bias claim on several statements the trial judge made during the January 6, 2016 hearing. However, we note at the outset that Mother did not object to any of these comments at the hearing. Where a defendant fails to object to comments a trial judge makes during trial, the issue is waived for review. *Flowers*, 738 N.E.2d at 1061.

[22]     Waiver notwithstanding, Mother's claim fails.  The trial court made some statements questioning Mother's participation in a confidential address program for victims of domestic abuse.  These statements did not show bias; rather, they are part of the court's explanation for its finding that Mother failed to provide sufficient evidence to support her claim that she could not appear before the court, as ordered.  Such an adverse finding, alone, is insufficient to show bias or prejudice.  *Dan Cristiani Excavating Co., Inc., v. Money*, 941 N.E.2d 1072, 1082 (Ind. App. Ct. 2011), *trans. dismissed*.

[23]     Nor did the trial court show bias against Mother when it observed that Mother was "elusive" and "enigmatic."  Those statements were merely the court's view of a party who had failed to appear before the court as ordered.  However, despite the trial court's subjective view of Mother and her failure to appear, its actions on that issue were ultimately in her favor in that the court decided not to issue a bench warrant for Mother's arrest for failure to appear.  Prejudice must be shown by trial *conduct* of the judge and not inferred from his subjective view.  *Richardson*, 34 N.E.3d at 703-04 (citing *Carter*, 761 N.E.2d at 435).  Mother has failed to show that the conduct of the hearing on the merits was affected in any manner by the court's alleged bias.

[24]     And, finally, the trial court did not, as Mother claims, call her a "degenerate river boat gambler" when it discussed her student loans.  Appellant's Br. at 30.  Rather, the trial court used the analogy of a gambler to (1) point out that it was Mother's choice to obtain student loans and (2) clarify its decision that Mother's choice to go into debt would not affect the amount Mother was

required to pay for L.C.'s college expenses. While the trial court's analogy to gambling may have been imperfect, it did not cross the barrier of impartiality and prejudice Mother's case. *Richardson*, 34 N.E.3d at 704. Mother has failed to show that the trial court was biased against her.

[25] Affirmed.

Vaidik, C.J., and Baker, J., concur.