[Cite as *State v. Wells*, 2019-Ohio-3605.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


State of Ohio                                         Court of Appeals No. L-18-1129

      Appellee                                  Trial Court No. CR0201702710

v.

Cayvon Wells                                     **DECISION AND JUDGMENT**

      Appellant                                 Decided: September 6, 2019

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lauren Carpenter, Assistant Prosecuting Attorney, for appellee.

Neil S. McElroy, for appellant.

* * * * *

**ZMUDA, J.**

{¶ 1} This matter is before the court on appeal from the judgment of the Lucas County Court of Common Pleas, General Division, imposing an 11-year prison term on appellant, following a jury trial. For the reasons that follow, we reverse the trial court's imposition of sentence, and remand the matter for the required procedure under R.C. 2152.121.

## I. Facts and Procedural Background

{¶ 2} On the night of January 16, 2017, Brian Roberts was shot and killed during a purported drug buy. He and a companion, Nathane Blaha, drove to the area of Kelly and Barrows streets in Toledo, Ohio, believing Stephen Kimble (known as "T.K.") wished to purchase a large quantity of marijuana for resale. Blaha and T.K. had previously met to arrange the sale, with another juvenile, D.S-P., (known as "D") attending that meeting.[1] Unknown to Roberts, however, T.K. had no intention to pay for the marijuana, but intended to rob Blaha and Roberts. T.K. received a text on the night of the "purchase," directing him to meet Roberts and Blaha in their car on Berkshire, near Barrows Street. T.K. sent D and appellant to meet up with Roberts and Blaha.

{¶ 3} At trial, D testified that he and appellant met the car, and got into the back seat, with D seated behind Roberts, the driver, and appellant seated behind Blaha. D asked for a cigarillo to test the weed, but Roberts and Blaha had nothing prepared to smoke. D indicated he would like to buy more than the amount Roberts brought, and asked for a scale. No one had a scale, so D and appellant left to get a scale, and Roberts and Blaha said they would go get their scale, too, and return with a larger quantity of marijuana.

---

[1] The jury heard that D.S-P. entered an admission and was adjudicated delinquent in juvenile court for his role in the crime, and defense counsel cross-examined D.S-P. with his juvenile court testimony.

{¶ 4} When Roberts and Blaha returned, they parked the car on Kelly and Barrows. This time, D testified, he sat behind Blaha, and appellant sat behind Roberts. D examined a bag of marijuana, and after handing it back, positioned himself to grab the bag and run from the car with it. After his grab and run, he noticed that he held only a corner of the bag of marijuana, and failed to grab the drugs. As he ran, D testified that he looked back toward the car and saw appellant tussling with Roberts and Blaha inside the car. D then claimed that he looked back a second time, and saw appellant running toward him with his arm reaching toward Roberts as he fired a gun. In prior testimony in juvenile court, however, D claimed he heard a gunshot, without any indication he saw appellant fire a gun. When D and appellant reached the house where T.K. was, D claims appellant said, "I think I shot him," and placed a gun on the TV stand. When the police approached the area, sirens blaring, D said that everyone panicked and scattered.

{¶ 5} Appellant also testified, and his version differed from D's testimony. Appellant admitted to going to meet Roberts and Blaha with D, because D asked him to accompany him. When they arrived at the car, Blaha was leaning against the driver's side of the car, and invited them to sit inside. After D asked about buying more marijuana than the amount Roberts had with him, and after D indicated he wanted to weigh the drugs, he and D left the car and Roberts and Blaha left for a scale and more marijuana, with plans to meet up later.

{¶ 6} Back at the house with T.K., appellant testified that he played video games with another youth while T.K. and D spoke in another room. When appellant and his

friend took a break from the video game, appellant noticed that T.K. and D were gone. Appellant resumed playing the video game, and after some time, D came running through the back door of the house, in apparent shock. According to appellant, D told appellant that he had shot someone, and appellant saw D with a gun, which D left on the TV stand. At that point, everyone was told to leave the house, and appellant went to his mother's house. Appellant stated he had no contact with D or the house where he played video games after that date.

{¶ 7} Police arrived on scene and saw the car, driver's side doors standing open, with marijuana strewn inside, and Roberts, lying lifeless in the street, a torn bag of marijuana clutched in his left hand. Despite lifesaving attempts, Roberts was dead at the scene from a bullet wound to the chest. By the time police arrived, Blaha was gone. A witness on scene, who wished to remain anonymous, indicated that at least two males, in addition to Roberts, were present during the incident. At the time of the incident, it was dark outside, with some illumination from streetlights.

{¶ 8} After examining the car, police recovered two latent fingerprints from the rear, driver's side door, and matched those fingerprints to appellant's left middle finger and left ring finger. Police also recovered a print from the rear, passenger's side door, and matched that print to D. Police identified Blaha after finding a backpack inside the car, containing Blaha's birth certificate and mail. Police also identified T.K. from Blaha's phone records. Both men were questioned, and Blaha initially identified D as the shooter and did not positively identify appellant or any other individual from photo

4.

arrays. Neither T.K. nor Blaha testified at trial. On the date of trial, T.K. was deceased, killed in an unrelated incident, and Blaha was incarcerated in Wisconsin, on unrelated charges.

{¶ 9} A complaint in delinquency was filed in juvenile court, charging appellant in the robbery and murder of Roberts. Because appellant was alleged to have murdered Roberts and to have used a firearm in committing aggravated robbery, he was subject to mandatory bindover pursuant to R.C. 2152.10 and 12.[2] On September 29, 2017, a Lucas County Grand Jury indicted appellant on one count of felony murder and one count of aggravated robbery, each with a firearm specification.

{¶ 10} Although appellant was charged as the principal assailant, after presenting its case to the jury, appellee requested a jury instruction on complicity, which the trial court granted. The trial court provided the following instruction regarding complicity:

> The State of Ohio has presented a theory that the defendant acted in complicity with the principal offender in the commission of aggravated robbery. A person who is complicit with another in the commission of a criminal offense is regarded as guilty as if he personally performed every act constituting the offense. This is true even if he did not personally perform every act constituting the offense, or was not physically present at the time the offense was committed. Before you can find the defendant

---

[2] Murder is a category one offense and aggravated robbery is a category two offense. R.C. 2152.02 (AA) and (BB).

guilty of complicity in the commission of aggravated robbery, you must find beyond a reasonable doubt that on or about the 16th day of January, 2017, in Lucas County, Ohio, the defendant knowingly aided or abetted another in committing the offense of aggravated robbery.

{¶ 11} After deliberating, the jury returned an acquittal as to the murder charge, and a guilty verdict as to the aggravated robbery charge. The jury also returned a finding that appellant "*did not* have a firearm on or about his person or under his control" while committing the offense of aggravated robbery.

{¶ 12} On May 10, 2018, sentencing hearing was held, and the trial court heard argument regarding whether the matter was subject to reverse bindover under R.C. 2152.121. Appellant, through counsel, argued that, because the jury made the affirmative finding that he *did not* have a firearm, and the jury was instructed on complicity, R.C. 2152.121(B)(3) mandated a remand to the juvenile court after imposition and stay of sentence. However, appellee disagreed, arguing that, because appellant was charged as the principal offender, and the language of the indictment for aggravated robbery included the language indicating use of a deadly weapon, or firearm, proceedings under R.C. 2152.121(B)(3) were inapplicable.

{¶ 13} After considering the parties' argument, the trial court agreed with appellee, and imposed a prison term of 11 years. From this sentence, appellant filed a timely appeal, asserting a single assignment of error:

6.

The trial court erred as a matter of law when it failed to follow the sentencing procedure mandated by R.C. sec. 2152.121.

## II. Analysis

{¶ 14} In his sole assignment of error, appellant challenges the imposition of sentence, contrary to the provisions of R.C. 2152.121(B)(3). That section provides:

> If the court in which the child is convicted of or pleads guilty to the offense determines under division (B)(1) of this section that, had a complaint been filed in juvenile court alleging that the child was a delinquent child for committing an act that would be that offense if committed by an adult, division (A) of section 2152.12 of the Revised Code would not have required mandatory transfer of the case but division (B) of that section would have allowed discretionary transfer of the case, the court shall determine the sentence it believes should be imposed upon the child under Chapter 2929. of the Revised Code, shall impose that sentence upon the child, and shall stay that sentence pending completion of the procedures specified in this division. Upon imposition and staying of the sentence, the court shall transfer jurisdiction of the case back to the juvenile court that initially transferred the case and the juvenile court shall proceed in accordance with this division.

{¶ 15} The parties agree that, as charged, aggravated robbery with an attendant gun specification satisfies the statutorily mandatory transfer requirements. "R.C.

7.

2152.12(A)(1)(b)(ii) incorporates R.C. 2152.10(A)(2)(b) by reference and requires transfer when there is probable cause to believe that a 16-year-old or 17-year-old committed a category-two offense other than kidnapping while displaying, brandishing, indicating possession of, or using a firearm." *State v. D.B.*, 150 Ohio St.3d 452, 2017-Ohio-6952, 82 N.E.3d 1162, ¶ 11. The parties disagree, however, regarding disposition of the actual convicted offense, a category two offense with a finding that the offender *did not* use a firearm.

{¶ 16} Appellee urged the trial court, and urges this court, to follow the authority of *State v. Brookshire,* 2d Dist. Montgomery No. 25959, 2014-Ohio-5368 in finding R.C. 2152.121(B)(3) inapplicable. Reliance on this authority, however, is problematic, as the facts in that case are readily distinguishable, and the holding has been overruled.

{¶ 17} In that case, the juvenile defendant had been convicted and sentenced for one count of aggravated robbery with a firearm specification, for which reverse bindover proceedings did not apply. The Second District Court of Appeals then separately considered two other counts of aggravated robbery, within the same case, for which the defendant entered a guilty plea after dismissal of the firearm specifications. The Second District found these counts were also subject to reverse bindover, separately. *Brookshire* at ¶ 1, 4. The Second District rejected the defendant's complicity argument, as there was no finding that the defendant did not personally display or use a firearm. *Id.* at ¶ 6. In the present case, a jury made the finding that appellant did not display or use a firearm.

8.

**{¶ 18}** Furthermore, after *Brookshire* was decided, the Ohio Supreme Court held that courts could not separately sentence individual counts in a case, reversing the Second District. "Under the plain language of R.C. 2152.121(B)(3), the court is not empowered to split the case in two, with some portions going back to the juvenile court and others remaining with the general division of the court of common pleas." *D.B.,* 150 Ohio St.3d 452, 82 N.E.3d 1162, 2017-Ohio-6952, ¶ 15. Because the defendant in *Brookshire* had been convicted of at least one count of aggravated robbery with a gun specification, the entire case would have been subject to mandatory transfer.

**{¶ 19}** Despite acknowledging the jury's affirmative finding that appellant *did not* have a firearm, appellee argues that the jury's finding is of no consequence, and the acquittal on the firearm specification merely created a permissible inconsistency in the verdicts without affecting the guilty verdict for aggravated robbery, which includes use of a weapon as an element. In support, appellee argues that appellant was charged as the principal offender, and the jury verdict form did not "indicate [appellant] was convicted of aggravated robbery as an accomplice." This argument, however, ignores the fact that appellee requested and was granted an instruction on complicity, permitting the jury to find appellant guilty as an accomplice, as if he were the principal offender. *See* R.C. 2923.03(F) (an accomplice "shall be prosecuted and punished as if he were a principal offender.")

**{¶ 20}** The law regarding mandatory bindover is clear, relative to complicity. In *State v. Hanning*, 89 Ohio St.3d 86, 91, 738 N.E.2d 1059 (2000), the Ohio Supreme Court noted:

A plain reading of both statutes does not permit this court to apply the complicity concept of R.C. 2923.03 to the bindover proceedings of [former] R.C. 2151.26[3] because the bindover statute itself does not provide that a child can be bound over based on the fact that a firearm was used by an accomplice. If the General Assembly had intended for a mandatory bindover to occur whenever, as here, an accomplice of the juvenile used a firearm in committing the crime charged, it could have drafted the statute to expressly so provide.

**{¶ 21}** Appellee's position, that the jury actually convicted appellant as a principal offender, and just made a mistake in finding appellant ***did not*** have or use a firearm, is wholly disingenuous considering the fact that appellee requested the complicity instruction to the jury, and appellee never sought to reconcile an "inconsistent" verdict.

**{¶ 22}** The proceedings under R.C. 2152.121(B)(3) are mandatory, and in this case, clearly applicable. Therefore, the trial court erred in imposing sentence without

---

[3] The Ohio General Assembly repealed the previous bindover statute, R.C. 2151.26, in 2000, and enacted the current bindover statute, R.C. 2152.12. *See* S.B. 179, 2000 Ohio Laws 309.

complying with R.C. 2152.121(B)(3), and we find appellant's assignment of error well-taken.

## III. Conclusion

{¶ 23} Upon due consideration, we find appellant's assignment of error well-taken, reverse the judgment of the Lucas County Court of Common Pleas, and remand the matter for the required procedure under R.C. 2152.121. Appellee is ordered to pay the costs of this appeal under App.R. 24.

Judgment reversed
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.
_____
JUDGE
Christine E. Mayle, P.J.

Gene A. Zmuda, J.
CONCUR.
_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions. Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.