## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 29 2017, 9:14 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Logan Bradley Lake
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Logan Bradley Lake,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

June 29, 2017

Court of Appeals Case No.
45A05-1605-PC-1137

Appeal from the Lake Superior Court

The Honorable Diane Ross Boswell, Judge

The Honorable Natalie Bokota, Magistrate

Trial Court Cause No.
45G03-1301-PC-2

**Mathias, Judge.**

Logan Bradley Lake ("Lake") was convicted in Lake Superior Court of murder, and his conviction was affirmed on direct appeal. Logan subsequently filed a petition for post-conviction relief, which was denied. Logan appeals *pro se* and presents six issues, which we consolidate and restate as follows:

I.   Whether Lake was denied the effective assistance of trial counsel;

II.  Whether Lake was denied the effective assistance of appellate counsel;

III. Whether Lake was denied the right to counsel in the post-conviction proceedings and denied a fair post-conviction hearing; and

IV.  Whether the trial court had subject matter jurisdiction and personal jurisdiction over Lake.

We affirm.

## Facts and Procedural History

The facts underlying Lake's murder conviction are as follows:

> On the evening of January 27, 2010, Lake and Dina Ivanovskaia met with Thomas Haynes in Schaumburg, Illinois. Haynes was upset because he had purchased what he thought was Ecstasy from Lake's brother but, instead, he received rock salt. Haynes wanted Lake to help resolve the situation with Lake's brother. During the meeting, Haynes showed Lake and Ivanovskaia a handgun in his vehicle's glove box. After a few minutes, Ivanovskaia went home, leaving Lake and Haynes together in Haynes's vehicle.

> On January 28, 2010, at approximately 4:00 a.m., Haynes's upstairs neighbor, Omar Herrera, heard a loud bang and "stuff moving around" in Haynes's apartment in Whiting, Indiana. At approximately 4:30 a.m., Ivanovskaia received a telephone call

from Lake. Lake asked Ivanovskaia to calm Haynes down. Lake said that he had Haynes's gun in his hand, that Haynes wanted to take it from him, and that the gun went off. Lake told Ivanovskaia that the bullet missed Haynes and hit the wall. Lake said that Haynes was angry and asked Haynes to talk to Ivanovskaia. Ivanovskaia heard Lake talking to Haynes but never heard Haynes respond. Lake sounded like he had been drinking and seemed scared and panicked.

At approximately 11:00 a.m. on January 28th, David Davids was working as a bus driver and was getting gasoline at a gas station near Haynes's apartment. Lake approached Davids and asked for a ride to the South Shore train station. Davids responded that he could give Lake a ride, and Lake went behind the gas station and retrieved a large, black garbage bag. Davids saw a Playstation 3 gaming system in the bag and was concerned that it was stolen. Lake kept reassuring Davids that it was not stolen. After dropping off Lake at the train station, Davids stopped at the East Chicago police station and reported the incident. Officer Benjamin Lopez of the East Chicago Police Department responded to the train station and located Lake. Lake was carrying a large garbage bag that contained multiple Blu-Ray movies and two controllers for a Playstation 3. A Playstation 3 was found in a garbage can near Lake. The officers arrested Lake for public intoxication.

Later that evening, Haynes's girlfriend, Aimee Spencer, went to Haynes's apartment because she had been unable to contact him all day. Spencer found Haynes's body on the living room floor and called the police. Initially, police did not realize that Haynes had been shot because there was no blood at the scene. However, an autopsy revealed that Haynes had been shot. The bullet entered his body on the right side of his back, lacerated his right lung, fractured his thoracic spine, lacerated his left lung, and exited his body on the left side of his back. The blood collected inside of his chest cavity, which explained the lack of blood at the scene. Based on the amount of blood inside Haynes's chest

cavity, the pathologist thought that Haynes did not die immediately and possibly lived a few hours. However, Haynes would have been immobilized at least after a few minutes.

In the early morning hours of January 29th, Herrera heard someone trying to get into Haynes's apartment. Herrera went outside onto his balcony and asked "who was down there." Lake responded, "Oh, it's me. I'm looking for [Haynes]." While his wife called the police, Herrera said that he did not know where Haynes was and that Haynes was not home. Lake said that he was supposed to play video games with Haynes, and Herrera told Lake that Haynes had died. Lake left after seeing that Herrera's wife was on the phone.

After learning that Haynes had been shot, the police returned to the scene on January 29th and found a handgun in the closet and a bullet hole and bullet in the wall in the living room. They also learned that Haynes's Playstation 3 gaming system and numerous Blu-Ray movies were missing. The serial number on the Playstation 3 gaming system found with Lake matched the serial number of Haynes's Playstation 3. Based on receipts in Haynes's apartment, the police were also able to show that Haynes purchased at least some of the Blu-Ray movies in Lake's possession when Lake was arrested.

The State charged Lake with murder, and Lake was later arrested in Oklahoma. At his jury trial, a firearms examiner testified that the bullet that killed Haynes was fired from the handgun found in the closet. She testified that the gun involved in the shooting was a revolver. She performed a trigger pull test to determine the amount of pounds needed to pull the trigger. In the single action mode with the gun's hammer cocked, it took three pounds of pressure to fire the weapon. In the double action mode with the gun's hammer uncocked, it took ten and one-half pounds of pressure to fire the weapon. She also performed an impact test to simulate whether the firearm would discharge if it was dropped or snagged on something. As part of the impact test, the firearms examiner hit the gun with a hammer over 150 times in both the

single action mode and the double action mode, and the gun did not discharge. DNA found on the grips of the handgun and the cylinder release demonstrated the presence of a mixture from which Haynes, Lake, and another unknown individual could not be excluded as possible contributors. During closing argument, Lake argued that the State did not prove that he intended to kill Haynes. The jury found Lake guilty as charged, and the trial court sentenced him to sixty years in the Department of Correction.

*Lake v. State*, No. 45A03-1106-CR-256, 2012 WL 667035 at *1-2 (Ind. Ct. App. Feb. 29, 2012) (mem. dec.) (citations omitted), *trans. denied*. On direct appeal, Lake challenged the sufficiency of the evidence to sustain his murder conviction, arguing that the evidence showed that the gun discharged accidently. We rejected this claim and affirmed Lake's conviction. *Id.*

[4] Lake filed his first post-conviction petition *pro se* on January 28, 2013, and requested the assistance of the State Public Defender. An attorney from the State Public Defender's Office filed an appearance on Lake's behalf on March 19, 2013. Lake, however, subsequently hired another attorney who entered an appearance on his behalf, at which time the public defender requested and received permission to withdraw her appearance. Lake's private counsel then filed a motion to dismiss Lake's previously filed *pro se* petition for post-conviction relief without prejudice, which the post-conviction court granted, thereby closing the case.

[5] Then, on October 22, 2013, Lake filed another *pro se* petition for post-conviction relief. The public defender then filed an appearance on Lake's behalf on

November 14, 2013. On February 25, 2014, the attorney from the public defender's office filed a motion to withdraw her appearance based on Post-Conviction Rule 1(9)(c), which permits the State Public Defender's Office to withdraw an appearance on behalf of a post-conviction petitioner "[i]n the event that counsel determines the proceeding is not meritorious or in the interests of justice[.]"

[6] The post-conviction court held evidentiary hearings on Lake's post-conviction petition on January 29, March 23, and May 15, 2015. The post-conviction court took judicial notice of the record in Lake's direct appeal and requested that the parties submit proposed findings and conclusions. On May 19, 2016, the post-conviction court issued its findings of fact and conclusions of law denying Lake's petition. Lake now appeals.

## Post-Conviction Standard of Review

[7] Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. *McCary v. State*, 761 N.E.2d 389, 391 (Ind. 2002). Post-conviction proceedings instead afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Davidson v. State*, 763 N.E.2d 441, 443 (Ind. 2002). The post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Henley v. State*, 881 N.E.2d 639, 643 (Ind. 2008). Thus, on appeal from the denial of a petition for post-conviction relief, the petitioner stands in the position of one appealing

from a negative judgment. *Id*. To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id*. at 643-44.

[8] The post-conviction court made specific findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). On review, we must determine if the court's findings are sufficient to support its judgment. *Graham v. State*, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), *aff'd on reh'g*, 947 N.E.2d 962. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings for clear error. *Id.* Accordingly, we will not reweigh the evidence or judge the credibility of witnesses, and we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. *Id.*

### I. Assistance of Trial Counsel

[9] Lake claims that his trial counsel was ineffective. Our supreme court has summarized the law regarding claims of ineffective assistance of trial counsel as follows:

> A defendant claiming a violation of the right to effective assistance of counsel must establish the two components set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness, and that the errors were

so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. The *Strickland* Court recognized that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective. The two prongs of the *Strickland* test are separate and independent inquiries. Thus, if it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.

*Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001) (citations and quotations omitted). As Lake claims that his trial counsel was ineffective in a variety of ways, we address each of his specific claims in turn.[1]

---

[1] We note that Lake's brief is difficult to follow at times, but we have endeavored to address his claims on the merits where possible. *See Armstrong v. State*, 932 N.E.2d 1263, 1270 (Ind. Ct. App. 2010) (noting our preference to address issues on their merits where possible). Though we recognize that Lake is proceeding *pro se* and lacks legal training, it is well settled that we hold *pro se* litigants to the same standards as trained counsel. *Pannell v. State*, 36 N.E.3d 477, 485 (Ind. Ct. App. 2015), *trans. denied*.

### A. Counsel's Work Load

[10] Lake contends that his trial counsel violated the relevant Rules of Professional Conduct by failing to control his workload. *See* Ind. Prof. Conduct Rule 1.3, comment 2 ("A lawyer's workload must be controlled so that each matter can be handled competently."). The State correctly notes, however, that Lake did not present this claim in his original or second petition for post-conviction relief. A claim for post-conviction relief may not be presented for the first time on appeal. *Stevens v. State*, 770 N.E.2d 739, 746 (Ind. 2002) (citing *Allen v. State*, 749 N.E.2d 1158, 1171 (Ind. 2001)).[2]

### B. Counsel's Lack of Knowledge of Lake's Arrest

[11] Lake next argues that his trial counsel was ineffective due to his "lack of knowledge of [Lake]'s entire Oklahoma arrest and of the [State]'s violated [sic] Prof. Cond. Rule 3.4(a) and Brady of an unlawfully destruction [sic] of bus-ticket evidence of [Lake] traveling to IL[linois] to turn himself in." Appellant's Br. at 26-27. This appears to be a reference to the fact that, after his initial arrest for public intoxication, Lake fled Indiana and was in Oklahoma when he was taken into custody for Haynes's murder. However, Lake provides no citation to the record to support his allegation, nor does he further develop this claim. Accordingly, it is waived. *See Smith v. State*, 822 N.E.2d 193, 202-03 (Ind. Ct.

---

[2] Lake also argues that the trial court improperly denied his trial counsel's oral motion for a continuance, citing Judicial Conduct Rule 2.5(B), comment 4, which provides in part, "In disposing of matters promptly and efficiently, a judge must demonstrate due regard for the rights of parties to be heard and to have issues resolved without unnecessary cost or delay." This issue, however, was available, yet not presented, on direct appeal. As such, it is waived. *Timberlake*, 753 N.E.2d at 597.

App. 2005) (noting that a party waives an issue on appeal where he fails to develop a cogent argument or provide adequate citation to authority and portions of the record) (citing Ind. Appellate Rule 46(A)(8)(a) (providing that appellant's argument must be supported by cogent reasoning and that each contention must be supported by citations to the authorities, statutes, and the appendix or parts of the record on appeal relied on)).

### C. Counsel's Failure to Challenge Charging Information

[12] Lake claims that one of the investigating detectives, Detective Small, committed perjury, and that this vitiated the State's claim of probable cause to arrest him and the trial court's jurisdiction. Thus, Lake argues that his trial counsel was ineffective for failing to challenge "the Probable Cause," which we take to mean the probable cause affidavit supporting the charging information, and for failing to quash the charging information.

[13] Lake, however, fails to explain in what way Detective Small allegedly perjured himself, nor does he explain how the charging information or the probable cause affidavit supporting it were defective. Nor are we inclined to conjure up an argument on Lake's behalf. Moreover, as noted by the State, our supreme court has held that "lack of probable cause is not grounds for dismissing a charging information." *Flowers v. State*, 738 N.E.2d 1051, 1055 (Ind. 2000). Thus, even if Lake were correct in his contention that the probable cause affidavit was deficient, "his only remedy would have been release from pre-trial detention predicated upon an illegal arrest." *Id*. "'An invalid arrest does not affect the right of the State to try a case nor does it affect the judgment of

conviction.'" *Id.* (quoting *Felders v. State*, 516 N.E.2d 1, 2 (Ind. 1987)). Lake's argument that his trial counsel was ineffective for failing to challenge the probable cause affidavit therefore fails.

### D. Counsel's Failure to Challenge a Receipt

Lake's next argument is not entirely clear to us, but he appears to claim that his trial counsel was ineffective due to his lack of knowledge regarding the receipts the police used to show that the Blue-Ray movies discovered in Lake's possession were the same as those that had been stolen from the home of the victim, Haynes. From what we can gather, Lake's complaint is based on the fact that there were two receipts from a video store showing that certain movies had been bought. Only one of these receipts contained the name of the victim, and this receipt was for two movies that were not found in Lake's possession when he was arrested. According to Lake, the receipt with Haynes's name should have been excluded, presumably as irrelevant, and without Haynes's name, the other receipt would not have tied the movies found in Lake's possession to Haynes.

We cannot say that Lake's trial counsel's performance was deficient in this regard. One receipt contained Haynes's name but not the movies found in Lake's possession; the other contained the movies found in Lake's possession but not Haynes's name. Yet the fact remains that both receipts were found in Haynes's home, and both were from the same store. Lake fails to explain how his trial counsel could have had the other receipt excluded. Nor are we of the opinion that the admission of the receipt with Haynes's name was prejudicial in

the *Strickland* sense. This is especially true given that the police also found a Playstation 3 game console in Lake's possession when he was arrested, and the serial number for this console matched that of the one purchased by Haynes. Thus, the State clearly established that the items found on Lake when he was arrested for public intoxication had been taken from Haynes's home. Lake has not demonstrated that his trial counsel was constitutionally ineffective for failing to move to exclude the receipts from evidence.

### E. Fruit of the Poisonous Tree

Lake next references the fruit-of-the-poisonous-tree doctrine. Lake's argument on this issue is short and difficult to follow. From what we are able to discern, he claims that when he was arrested in East Chicago for public intoxication, that arrest was invalid. Thus, according to Lake, anything found as a result of this allegedly improper arrest should have been suppressed. Lake, however, fails to explain how his arrest was illegal. At the post-conviction hearing, Lake argued that his arrest was invalid and not supported by probable cause in that the public intoxication charges were later dismissed. He also claimed, while questioning his trial counsel, that the charges were dismissed because a subsequent breathalyzer test indicated that he was not intoxicated.

Again, on appeal, Lake refers us to no evidence supporting his claim that he was not intoxicated when he was arrested by the police in East Chicago for public intoxication. His questions during the examination of his trial counsel are not evidence, as Lake was not testifying under oath; and even if he had been under oath, the post-conviction court was under no obligation to credit Lake's

statements. Furthermore, there was evidence at Lake's trial that he was intoxicated at the time, as Ivanovskaia testified that when Lake called her after the shooting, he sounded like he had been drinking and was slurring his words. Tr. pp. 85, 103-104. Because Lake failed to establish that his arrest was illegal, we cannot say his trial counsel was ineffective for failing to challenge the admissibility of the evidence found on Lake when he was arrested.

### F. Counsel's Lack of Knowledge Regarding DNA Testing

[18]   Lake next[3] claims that his trial counsel was ineffective due to his "lack of knowledge of GSR and DNA, consequently came [sic] from not maintaining Competence pursuant to Prof. Cond. R. 1.1(6)." Lake however, fails to explain precisely what his counsel's lack of knowledge was or how he was prejudiced thereby. We therefore consider this argument to be waived for failure to make a cogent argument. *See Smith*, 822 N.E.2d at 202-03 (citing App. R. 46(A)(8)(a)).

[19]   Later in his brief, however, Lake makes a more cognizable argument regarding his trial counsel's alleged lack of knowledge regarding various types of DNA tests and the standards of CODIS.[4] Lake appears to claim his trial counsel

---

[3] Interspersed with his other claims of ineffectiveness, Lake writes, "The facts at the P-C.R. Evid. hearing that [his trial counsel] claimed to have 'missed', which are argued legally in foregoing issue B) of the prosecution's violation of Prof. Cond. Rs. and the rights of the petitioner[]." Appellant's Br. at 28. We are unable to discern Lake's argument on this point and consider it waived for failure to make a cogent argument. *See* App. R. 46(A)(8)(A); *Smith*, 822 N.E.2d at 202–03.

[4] CODIS is an acronym for the FBI's Combined DNA Indexing System, which was put into service in the late 1990s. *Quinn v. State*, 45 N.E.3d 39, 43 (Ind. Ct. App. 2015). "CODIS is a nationwide DNA database and has sub-databases for each state. DNA profiles are stored in CODIS, and law enforcement agencies can compare DNA profiles generated from pieces of evidence against the DNA profiles in CODIS to find a match." *Id*. Indiana joined CODIS in 1996, *Patterson v. State*, 742 N.E.2d 4, 10 (Ind. Ct. App. 2000), *clarified on reh'g*, and started submitting DNA profiles to CODIS in 2000. *Quinn*, 45 N.E.3d at 43.

should have challenged the admissibility of the DNA evidence used at his trial because it did not meet the standards for inclusion in the CODIS database. However, Lake cites no authority supporting the position that DNA evidence is inadmissible if it fails to meet the qualifications for inclusion to CODIS. His argument therefore fails.

### G. Lake's Decision Not to Testify

[20] Lake also claims that his counsel was ineffective because he did not know what Lake's testimony would have been and, therefore, did not give him competent advice regarding whether Lake should have testified at trial. We first note, however, that the decision of whether to testify is personal to the defendant and is a choice that the defendant, and not counsel, controls. *Kimbrough v. State*, 911 N.E.2d 621, 640 (Ind. Ct. App. 2009).

[21] Lake's trial counsel testified at the post-conviction hearing that he discussed with Lake the issue of whether Lake should testify. Although he could not recall the details of his conversation, he explained that his practice was to advise clients of the risks involved in testifying and explain the sort of questions that the prosecuting attorney might ask during cross-examination. He also explained that his practice is to inform his clients that the ultimate decision on whether to testify is the defendant's. He also stated that both he and Lake agreed that Lake would not testify. Under these facts and circumstances, Lake has not established that his trial counsel was ineffective with regard to his advice that Lake not testify.

### H. Failure to Challenge Alleged Hearsay Evidence

[22]     Lake next claims that his trial counsel was ineffective for failing to challenge as hearsay Ivanovskaia's testimony regarding what Lake told her over the telephone on the night of the shooting. Lake claims that this evidence was inadmissible hearsay and was not corroborated, which he claims was in violation of Indiana Code section 35-33-5-2. As the State correctly notes, however, this section governs the use of hearsay in affidavits used to support a finding of probable cause for the issuance of search warrants and has nothing to do with the use of hearsay at trial. The use of hearsay at trial is regulated by the Indiana Rules of Evidence. Under Evidence Rule 801(d)(2)(A), Lake's own out-of-court statements offered into evidence against him were, by definition, not hearsay. *See id.* ("[A] statement is not hearsay if . . . [t]he statement is offered against an opposing party and . . . was made by the party in an individual or representative capacity[.]"). Thus, Lake's trial counsel cannot be said to have been ineffective for failing to challenge the admission of this evidence.

### I. Lake's Claims of Mental Illness and Learning Disabilities

[23]     Lake also claims that he suffers from both mental illness and learning disabilities, which adversely impacted his ability to make proper decisions at trial. As noted by the State, however, Lake cites nothing to support his bald assertions regarding his competency. Thus, to the extent that Lake argues that his trial counsel was ineffective for failing to argue his competence at trial, his argument fails. To the extent that Lake makes this argument as a freestanding claim of error untethered from his claim of ineffective assistance of trial

counsel, it is waived because it was available on direct appeal. *See Timberlake*, 753 N.E.2d at 597 (holding that issues available but not presented on direct appeal may not be presented for the first time in petition for post-conviction relief).

### J. Counsel's Alleged Failure to Move for Judgment on the Evidence

[24] Lake also briefly argues that his trial counsel should have moved for judgment on the evidence. As noted by the State, however, Lake's trial counsel did, in fact, move for judgment on the evidence,[5] Trial Tr. pp. 643-44, but his motion was denied. Thus, this cannot be the basis for a claim of ineffectiveness.

[25] In short, Lake has not met his burden on appeal of showing that the post-conviction court clearly erred in denying his claims of ineffective assistance of trial counsel.

## II. Assistance of Appellate Counsel

[26] Lake also claims that he was denied the effective assistance of appellate counsel. When we review claims of ineffective assistance of appellate counsel, we use the same standard applied to claims of ineffective assistance of trial counsel, i.e., the post-conviction petitioner must show that appellate counsel's performance fell below an objective standard of reasonableness and that there is

---

[5] Lake's trial counsel termed his motion as one for a directed verdict. However, a directed verdict and judgment on the evidence are the same thing. *See Garcia v. State*, 979 N.E.2d 156, 157 (Ind. Ct. App. 2012) (noting that motions for directed verdict are also called motions for judgment on the evidence); *see also* Ind. Trial Rule 50 (titled "Judgment on the evidence (Directed verdict)").

a reasonable probability that, but for the deficient performance of counsel, the result of the proceeding would have been different. *Manzano v. State*, 12 N.E.3d 321, 330 (Ind. Ct. App. 2014) (citing *Harris v. State*, 861 N.E.2d 1182, 1186 (Ind. 2007)). To show that counsel was ineffective for failing to raise an issue on appeal, the defendant must overcome the strongest presumption of adequate assistance, and judicial scrutiny is highly deferential. *Id*. (citing *Reed v. State*, 856 N.E.2d 1189, 1195 (Ind. 2006)).

[27] To evaluate the performance prong when counsel failed to raise issues upon appeal, we apply the following test: (1) whether the unraised issues are significant and obvious from the face of the record and (2) whether the unraised issues are "clearly stronger" than the raised issues. *Id*. If the analysis under this test demonstrates deficient performance, then we examine whether "the issues which . . . appellate counsel failed to raise, would have been clearly more likely to result in reversal or an order for a new trial." *Id*. at 329-330.

[28] Ineffective assistance is very rarely found in cases where a defendant asserts that appellate counsel failed to raise an issue on direct appeal because the decision of what issues to raise is one of the most important strategic decisions to be made by appellate counsel. *Id*. at 330. Indeed, our supreme court has warned that we "should be particularly sensitive to the need for separating the wheat from the chaff in appellate advocacy, and should not find deficient performance when counsel's choice of some issues over others was reasonable in light of the facts of the case and the precedent available to counsel when that choice was made."

*Reed*, 856 N.E.2d at 1195 (quoting *Bieghler v. State*, 690 N.E.2d 188, 194 (Ind. 1997)).

### *A. Failure to Raise Claim of Evidentiary Error*

[29] Lake's argument regarding ineffective assistance of appellate counsel is unclear, but from what we can discern, he first claims that his appellate counsel should have presented a claim regarding the admission of the receipts found at Haynes's apartment that showed that Haynes had purchased movies that were later found in Lake's possession. As noted above, Lake's trial counsel did not object to the admission of these receipts and therefore waived the issue for purposes of appeal. *See Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010) (noting that a contemporaneous objection at the time the evidence is introduced at trial is required to preserve an issue of evidentiary error for appeal).

[30] Furthermore, Lake's argument regarding the admissibility of the receipts is, at best, misplaced. He again refers to Indiana Code section 35-33-5-2, which governs the use of hearsay in affidavits used to support a finding of probable cause for the issuance of search warrants, not the use of hearsay at trial. He also refers to Evidence Rule 803(15), but does not explain how this rule would make the admission of a receipt somehow improper. *See Stahl v. State*, 686 N.E.2d 89, 93-94 (Ind. 1997) (noting that Evidence Rule 803(15) is meant to apply to "dispositive" documents that are regarded as "inherently reliable," such as deeds, liens, and bills of sale). Because Lake has not established that the receipts were inadmissible, his argument that his appellate counsel was deficient for failing to raise this argument on direct appeal fails.

### B. Failure to Argue Prosecutorial Misconduct

[31] Lake also argues that his appellate counsel was ineffective for failing to present on direct appeal a claim of prosecutorial misconduct. Again, Lake's trial counsel did not object to any of the statements at issue. Thus, the claims would have been waived for purposes of appellate review. *See Ryan v. State*, 9 N.E.3d 663, 667 (Ind. 2014) (noting that failure to raise a claim of prosecutorial misconduct in the trial court results in waiver on appeal). Thus, Lake's appellate counsel would have had to establish fundamental error. This is a very heavy burden, as explained by our supreme court:

> Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to make a fair trial impossible. In other words, to establish fundamental error, the defendant must show that, under the circumstances, the trial judge erred in not *sua sponte* raising the issue because alleged errors (a) constitute clearly blatant violations of basic and elementary principles of due process and (b) present an undeniable and substantial potential for harm. The element of such harm is not established by the fact of ultimate conviction but rather depends upon whether [the defendant's] right to a fair trial was detrimentally affected by the denial of procedural opportunities for the ascertainment of truth to which he otherwise would have been entitled. In evaluating the issue of fundamental error, our task . . . is to look at the alleged misconduct in the context of all that happened and all relevant information given to the jury—including evidence admitted at trial, closing argument, and jury instructions—to determine whether the misconduct had such an undeniable and substantial effect on the jury's decision that a fair trial was impossible.

*Id.* at 668 (citations and internal quotations omitted). Given the nature of the extremely narrow fundamental error exception, we cannot fault Lake's appellate counsel for failing to raise this issue on direct appeal.

[32] Even if this issue had been presented on direct appeal, Lake has not demonstrated that his appellate counsel would have been successful. Lake claims that the prosecutor committed misconduct by attacking the credibility of Lake's mother as a witness, citing *Craig v. State*, 267 Ind. 359, 366, 370 N.E.2d 880, 884 (1977), for the proposition that "it is unprofessional conduct for an attorney to simply assert that a witness is untruthful." However, it is not misconduct for an attorney to argue, "for reasons arising from the evidence" that "a witness should be disbelieved." *Id.*, 267 Ind. at 366-67; *see also Cooper v. State*, 854 N.E.2d 831, 836 (Ind. 2006) ("[A] prosecutor may comment on the credibility of the witnesses as long as the assertions are based on reasons which arise from the evidence.").

[33] Lake has failed to show that the prosecutor's statements were anything but comments on the evidence. In fact, he has failed to cite to any portion of the trial record that supports his claims. Our review of the trial transcript indicates that Lake is most likely referring to the following portion of the prosecution's closing argument:

> Now, [Lake]'s mom would lead you to believe that they left the house at 11:00 o'clock, which is, by the way, a half an hour later than Dee [i.e., Ivanovskaia] testified that she arrived back home and goes to bed.

And [Lake]'s mom told you a lot of things, and it's up to you to choose what, if anything, you believe of what [Lake]'s mom had to say.

You understand, and you'll receive an instruction in this regard, that [Lake]'s mom, you know, has motivation to tell a story that may be a bit shy of the truth.

Trial Tr. p. 707.

[34] From this, we conclude that the prosecuting attorney did not simply assert that Lake's mother was lying; he instead pointed out that she had a motivation to not be entirely truthful in order to protect her son from a lengthy prison sentence and that her testimony was inconsistent with Ivanovskaia's testimony. Thus, the prosecuting attorney simply commented on the credibility of a witness based on the evidence. The prosecuting attorney also stated that it was ultimately the jury's duty to determine the credibility of Lake's mother as a witness. From this, we discern no prosecutorial misconduct, much less fundamental error that should have been presented on direct appeal.

[35] We reach a similar result with regard to Lake's fleeting argument that the prosecutor committed misconduct by misstating the testimony of Ivanovskaia. Lake wholly fails to explain in what way the prosecutor's statement was incorrect.

[36] Lake further contends that the prosecutor committed misconduct by stating during closing argument that the DNA evidence "confirmed" that Lake had handled the gun that shot Haynes. Lake argues that this, along with the

prosecutor's statement that "that's what happened that night, and that's the person who did it," implied that the prosecutor was referring to a personal knowledge of Lake's guilt and urging the jury to convict on that basis. *See Gaby v. State*, 949 N.E.2d 870, 880-81 (Ind. Ct. App. 2011) (noting that an attorney should not assert a personal knowledge of facts in issue except when testifying as a witness) (citing Ind. Professional Conduct Rule 3.4(e)).

[37] Again, Lake fails to cite to the portion of the trial record to which he is referring. Our review of the trial transcript indicates that Lake is most likely referring to the portion of the State's closing argument where the prosecuting attorney referenced Ivanovskaia's testimony that Lake had called her and told her the he had been holding Haynes's handgun, that Haynes became angry at him and attempted to take the gun away from him, and that the gun "went off." Trial Tr. p. 716. Lake then falsely told Ivanovskaia that no one was injured as a result of this allegedly accidental firing of the weapon. The prosecuting attorney noted that this testimony was consistent with the DNA evidence, stating,

> We got the DNA. *We got the DNA that confirms what* [Lake] *said. We got the DNA that confirms that* [Lake] *handled that handgun that belonged to Tommy* [Haynes].
>
> We have the . . . firearms expert – or, I'm sorry. We have the DNA that tells you that the bullet that was recovered from the wall, in the absence of an identical twin, the DNA that was on that bullet was the DNA of Tommy Haynes.
>
> That bullet was the bullet that traveled through his body and killed him. There's no way around that, there's no way around that, no way around that.

Now, you know, did this occur during a struggle? Did this occur haphazardly or accidentally? No, no, no. Because you have the gun that's found. You have the gun that's found, and when the gun is found, the hammer on the gun is cocked back.

What did the police tell you? What did the experts tell you? It's cocked back and ready to fire again. What does that information tell you?

That information tells you that, "You know what, I shot you, I intended to kill you, and if you're not dead, I'm going to shoot you again."

*That's what happened that night and that's the person that did it.*

Trial Tr. pp. 717-18 (emphases added).

[38]    In context, it is apparent that the prosecuting attorney was not asserting any personal knowledge of Lake's guilt. He was simply commenting on the weight of the evidence and encouraging the jury to find Lake guilty as charged. This is entirely permissible. *See McBride v. State*, 785 N.E.2d 312, 319 (Ind. Ct. App. 2003) (holding that no prosecutorial misconduct occurred in prosecutor's argument that defendant's claim that revolver fired accidentally was a lie because prosecutor's statements were merely a comment on the evidence); *see also Miller v. State*, 623 N.E.2d 403, 408 (Ind. 1993) ("[e]xpression of a personal opinion is not improper where the prosecutor is commenting on the credibility of the evidence as long as there is no implication that he had access to special information outside the evidence presented to the jury and that such outside information convinced the prosecutor of the guilt of the accused.").

[39]     Nor do we find any merit in Lake's argument that the prosecutor committed misconduct by stating that the DNA evidence "confirmed" that Lake handled the gun. The evidence adduced at trial indicated that the DNA recovered from the grip and revolver cylinder of the gun used to shoot Haynes contained a DNA profile from which Lake could not be excluded as a contributor. Although it may have been more precise for the prosecuting attorney to have said that this DNA evidence "supported," rather than "confirmed" Ivanovskaia's testimony, we cannot say that the prosecuting attorney committed misconduct by using the word "confirm." Indeed, it was not even disputed at trial that Lake had handled the gun; his defense was that the gun had accidentally discharged. *See* Trial Tr. pp. 720-21 (defense closing argument admitting that Lake handled the gun but that the gun "went off" when Haynes reached for it).[6]

[40]     Lake also argues that the prosecuting attorney "fraudulently mischaracterized" Haynes's telephone records. Appellant's Br. at 33. Yet again, Lake wholly fails to explain what statements of the prosecuting attorney to which he refers. Regardless, we fail to see how Lake could have been harmed by any such statements even if they were improper, as the telephone records simply established that Haynes did not answer his telephone after the shooting. Lake's theory of the case was that the weapon discharged accidentally, not that Haynes

---

[6] Lake also briefly complains that the prosecutor mentioned that the handgun used to shoot Haynes was cocked when found by the police. However, the evidence presented at trial did show that the police found the weapon with the hammer cocked. Thus, the prosecutor was simply commenting on the evidence adduced at trial, and no misconduct occurred.

was not shot and killed. We see no prosecutorial misconduct in this regard. Given the weakness of Lake's claims of prosecutorial misconduct, his appellate counsel was not ineffective for failing to present such weak arguments on direct appeal.

[41] In summary, Lake has not established that the post-conviction court clearly erred by rejecting his claim of ineffective assistance of appellate counsel.

## III. Post-Conviction Proceedings

[42] Lake also argues that the "[t]he entire Post-Conviction proceedings were tainted from start to end." Appellant's Br. at 34–35.

### A. Post-Conviction Counsel

[43] Lake first claims that his post-conviction counsel misrepresented several issues he wished to present to the trial court and lied about what his trial counsel had told her. This, he claims, violated his right to counsel under the Sixth Amendment.

[44] We initially observe that Lake's post-conviction counsel withdrew her appearance well before the evidentiary hearings on Lake's petition were held in 2015. Lake does not explain precisely which issues his post-conviction counsel misrepresented or how she allegedly lied about what Lake's trial counsel informed her. We therefore consider this issue to be waived. *See* App. R. 46(A)(8)(A); *Smith*, 822 N.E.2d at 202-03.

Moreover, Lake's claim that his post-conviction counsel's actions deprived him of his right to counsel under the Sixth Amendment is completely meritless. It is well established that there is no constitutional right to counsel in post-conviction proceedings under either the federal Constitution or the Indiana Constitution. *McKnight v. State*, 1 N.E.3d 193, 205 (Ind. Ct. App. 2013) (citing *Hill v. State*, 960 N.E.2d 141, 145 (Ind. 2012)).

### B. Denial of Request for Post-Conviction Transcript

Lake further argues that the post-conviction court erred by denying his request for the transcript of the post-conviction hearings for him to use in preparing his proposed findings and conclusions. Lake claims that the trial court's denial of his request denied him due process. We disagree.

Lake cites to no rule that would require the post-conviction court to grant him access to the transcript of the evidentiary hearings in order to assist in his preparation of his proposed findings and conclusions. To be sure, the post-conviction rules provide that

> [p]etitioners who are indigent and proceeding in forma pauperis shall be entitled to production of guilty plea and sentencing transcripts at public expense, prior to a hearing, if the petition is not dismissed. In addition, such petitioners *shall also be entitled to a record of the post-conviction proceeding at public expense **for appeal of the denial or dismissal of the petition.***

Ind. Post-Conviction Rule 1(9)(b) (emphases added). This rule states that indigent petitioners are entitled to guilty plea and sentencing transcripts prior to

a post-conviction hearing. However, Lake does not claim that he was denied access to the trial record in this case. Post-Conviction Rule 1(9)(b) also provides that indigent petitions are entitled to a record of the post-conviction proceedings, at public expense, "for appeal of the denial or dismissal of the petition." Here, Lake was provided with such records for purposes of the instant appeal.

[48] Nothing in the post-conviction rules or any other authority provided to us by Lake states that petitioners are entitled to a transcript of the evidentiary hearing to assist the petitioner in drafting proposed findings and conclusions. In fact, nothing in the post-conviction rules requires the trial court to request or accept proposed findings and conclusions.[7] Although access to the transcripts of the evidentiary hearings may have assisted Lake in drafting his proposed findings and conclusions, he personally appeared at all the hearings, and nothing indicates that it was somehow impossible for him to draft proposed findings and conclusions without the transcript of the post-conviction hearings.

[49] Accordingly, we cannot say that the trial court's denial of Lake's request for transcripts of the post-conviction hearings constituted reversible error. *See*

---

[7] We note that Trial Rule 52(C) provides that, whenever special findings of fact and conclusions thereon are to be made, "the court shall allow and may require the attorneys of the parties to submit to the court a draft of findings of fact and conclusions thereon which they propose or suggest that the court make in such a case." Assuming this rule applies in post-conviction proceedings, *see Mitchell v. State,* 946 N.E.2d 640, 645 (Ind. Ct. App. 2011) (citing T.R. 52(C) in a post-conviction context), it simply states that the trial court shall allow parties to submit proposed findings and conclusions, which the post-conviction court here did. Trial Rule 52(C) says nothing about whether a party has a right to a transcript of the proceedings before submitting such proposed findings and conclusions.

*Mitchell v. State*, 946 N.E.2d 640, 645 (Ind. Ct. App. 2011) (no reversible error where trial court denied petition for post-conviction relief before deadline for submitting proposed findings and conclusions had expired).

## IV. Lake's Reply Argument

Lake has filed a reply brief, which he also erroneously refers to as a "counter-claim." Lake's reply brief can best be described as incoherent, and the claims therein appear to be based on a variant of the "sovereign citizen" argument attacking the jurisdiction of the trial court. Any arguments presented in this reply brief are waived for failure to make a cogent argument.[8] Moreover, the "sovereign citizen" argument has been rejected by this and other courts. *See Taylor-Bey v. State*, 53 N.E.3d 1230, 1232 (Ind. Ct. App. 2016) (rejecting claim of self-described "Moorish American Sovereign National" that trial court lacked subject matter and personal jurisdiction); *United States v. Benabe*, 654 F.3d

---

[8] For illustrative purposes, the following is a brief sample of Lake's attack on the trial court's subject matter jurisdiction:

> LAKE County SUPERIOR COURT is a public venue with jurisdiction over straw men only and ORDERED (Drafted) a distress levy a/k/a commercial seizure for a temporary taking or suspension of the use is a Fourth (4th) Amendment UNITED Constitution Instrument known as a Warrant on Probable Cause - Stare Decisis (which that the State of Indiana has yet to produce the warrant's documentation til present day), and hence must be supported by Commercial Affidavit a/k/a Probable Cause Affidavit. i.e. Stare Decisis. The (Court must prove on the record, all jurisdiction facts related to the jurisdiction asserted) *Latana v. Hopper*, 102 F.3d 188; *Chicago v. New York* 37 F.Supp 150, i.e. 'De Facto' commercial State of Indiana had no Eyewitnesses, physical evidence of any kind (i.e. Records, Cameras, GSR, DNA and/or Fingerprints), with lead Detective Small at trial acknowledging that he "have no clue what happened." (P.E. No. 12, pg. 598: 7-8; the aforesaid and foregoing facts violated Indiana Rules of Evidence 901(a) . . . . Note * Legal Maxims No. 10: (Gen. 2-3; Matt. 4; Revelation, Legal Maxim: "If the Plaintiff does not prove his case, the defendant is absolved.")[.]

Appellant's Reply Br. at 14-15.

753, 767 (7th Cir. 2011) (collecting cases that have rejected the sovereign citizen argument).

[51] Furthermore, it is clear that the Lake Superior Court has subject matter jurisdiction over criminal matters, including murder. *See* Ind. Code § 33-33-45-3 (establishing Lake Superior Court); Ind. Code § 33-29-1.5-2 (providing that all superior courts have original and concurrent jurisdiction in all criminal cases). It is also clear that Lake appeared in person and by counsel before the Lake Superior Court and was accused of having committed a crime in Lake County. His claims of lack of personal jurisdiction are therefore specious. *See Taylor-Bey*, 53 N.E.3d at 1232 (holding that the Marion Superior Court had personal jurisdiction over defendant whose crime occurred in Marion County).

## Conclusion

[52] Lake's appellate arguments are ill-formed and difficult to follow, but we have attempted to address the issues he presents on the merits to the extent that this is possible. Having done so, we conclude that Lake's appellate arguments are completely meritless. He has failed to establish that he was denied the effective assistance of trial or appellate counsel. He has further failed to establish that his post-conviction counsel committed any error before withdrawing her appearance or that the post-conviction court erred in denying his request for transcripts, at the public expense, of the post-conviction hearings before submitting his proposed findings and conclusions. It is also abundantly clear that the trial court had both subject matter and personal jurisdiction. We therefore affirm the judgment of the post-conviction court in all respects.

Affirmed.

Kirsh, J., and Altice, J., concur.